UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 10-50002-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| LALA BRIGGS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

Defendant Lala Briggs is before the court on an indictment charging him

with possession of marijuana with the intent to distribute, in violation of 21

U.S.C. § 841(a)(1) and (b)(1)(D); use and carrying of a firearm during a drug

trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); being a felon in

possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2);

being an unlawful user of a controlled substance in possession of a firearm, in

violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2); and with forfeiture of firearm

and ammunition, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).

Mr. Briggs has filed a motion to suppress statements and evidence

obtained by police from Mr. Briggs and from his home. The government resists

the motion in part. The district court, the Honorable Jeffrey L. Viken, referred

this motion to this magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's standing order dated April 6, 2010.

## FACTS

An evidentiary hearing on this motion was held June 15, 2010, at which Mr. Briggs and his counsel, Gary Colbath, Jr., were present. The government was represented at the hearing by its Assistant United States Attorney Mark Vargo. At the hearing, Pennington County Sheriff's Deputy Todd Battest testified and one exhibit was received into evidence. From that evidence the court makes the following findings of fact.

On December 21, 2009, Deputy Battest was on duty serving felony arrest warrants. He had a state felony arrest warrant for Mr. Briggs for distribution of marijuana and he traveled to Mr. Briggs' home in Rapid City, South Dakota, for the purpose of executing the arrest warrant. Deputy Battest, dressed in street clothing, but armed with his weapon and customary equipment, knocked on Mr. Briggs' door to his apartment. Mr. Briggs answered the door.

Deputy Battest immediately smelled what he described as an overwhelming odor of raw marijuana coming from inside the residence. Deputy Battest identified himself as a sheriff's deputy, told Mr. Briggs that he had an arrest warrant for Mr. Briggs, told Mr. Briggs that he smelled marijuana, and immediately asked Mr. Briggs if the marijuana was on his person. As Deputy Battest delivered this salvo of information, he took a step into the entry area of Mr. Briggs' apartment. The area where Deputy Battest and Mr. Briggs were

now standing was a combination living room and dining room. Visible to Deputy Battest from the front door was a couch, a dining room table, and some chairs. From the entry area, Deputy Battest saw two sandwich-sized clear plastic baggies on the dining room table containing what Deputy Battest believed to be marijuana. Also on the dining room table, Deputy Battest saw glass pipes of the kind used to smoke marijuana.

Deputy Battest did not explicitly tell Mr. Briggs that he was under arrest, but he agreed that it was implicit. Deputy Battest testified that Mr. Briggs was never free to leave from the first moment Deputy Battest made contact with him. Deputy Battest testified that it was apparent from Mr. Briggs' body language and facial expression that he immediately understood the implications of his situation and that he was considering whether to cooperate with Deputy Battest or to attempt to flee. Deputy Battest testified that, fairly soon after initiating contact with Mr. Briggs, Mr. Briggs apparently decided to cooperate as he no longer displayed signals that he was considering fleeing.

Shortly after Deputy Battest entered Mr. Briggs' apartment, Mr. Briggs' mother and a thirteen year-old boy entered the room where Mr. Briggs and Deputy Battest were standing. Deputy Battest testified that he wanted back-up officers at the scene because he was outnumbered and because Mr. Briggs outweighed Deputy Battest by at least 200 pounds and, therefore, could overwhelm Deputy Battest if he chose to. Deputy Battest accordingly radioed

dispatch for backup units.  A short time later, a Deputy Oldson arrived on the scene.  Deputy Battest instructed Deputy Oldson to secure the evidence in view on the dining room table to make sure it was not destroyed while a search warrant was being secured.  When Deputy Oldson approached the dining room table, he observed a semi-automatic rifle in plain sight leaning against a corner.  Acting on concerns for officer safety, he immediately emptied the rifle of its ammunition.

Throughout this period of time, the law enforcement officers interrogated Mr. Briggs about the presence of marijuana on his person, the presence of marijuana elsewhere in the home, the presence of other firearms, and the presence of anything else the officers "should know about."  In response to this interrogation, Mr. Briggs told the officers that he had additional marijuana located in a shoe box on a shelf near the dining room table.  Although the shoebox was in plain sight from Deputy Battest's position near the entry area of the apartment, Deputy Battest could not see into the box and view its contents.  Never at any point during this initial period of contact with Mr. Briggs did any law enforcement officer advise Mr. Briggs of his Miranda[1] rights.

The officers at the scene relayed these facts to John Griswold, an agent with the South Dakota Division of Criminal Investigation.  Agent Griswold

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

prepared an affidavit and submitted the affidavit in support of a request for a search warrant for Mr. Briggs' apartment. That search warrant was issued by a state court judge. See Exhibit 1.

It is apparent from a review of the affidavit that some information was jumbled in its communication from the scene of Mr. Briggs' apartment to Agent Griswold, although the court expresses no opinion as to how this happened. Notably, the affidavit mentions the shoebox of marijuana that was *not* in plain view and that was discovered as a result of the officers' questioning of Mr. Briggs, but the affidavit does *not* mention at all the plastic bags of marijuana that *were* in plain view on the dining room table. Id. The affidavit, however, accurately states that Deputy Battest saw marijuana pipes on the table and that he smelled a strong odor of marijuana coming from the apartment immediately upon making initial contact with Mr. Briggs. Id.

Agent Griswold arrived at the Briggs apartment to execute the search warrant at approximately 11:30 pm. Deputy Battest had not left the apartment since he first arrived on Mr. Briggs' doorstep at approximately 7:20 pm that evening. Deputy Battest testified that he believed Agent Griswold advised Mr. Briggs of his Miranda rights when Agent Griswold arrived at the scene with the search warrant in hand.

Mr. Briggs now seeks to suppress the statements he made to law enforcement on December 21, 2009, for the reason that they were the product

of custodial interrogation without benefit of <u>Miranda</u> warnings and were involuntary.  Mr. Briggs also seeks to suppress physical evidence seized from his home pursuant to search warrant for the reason that Mr. Briggs' unwarned statements formed part of the probable cause for the issuance of that warrant and, thus, the warrant is fruit of the prior unwarned statements.  The government resists the motion in part.

**DISCUSSION**

**A.      Whether Mr. Briggs Was In Custody When He Was Interrogated on December 21, 2009, Necessitating the Giving of <u>Miranda</u> Warnings**

Mr. Briggs argues in support of suppressing his December 21, 2009, statements to the officers  was that he was "in custody" on that occasion, necessitating the advisement of his <u>Miranda</u> rights.  Mr. Briggs argues that the officers did not advise him of his <u>Miranda</u> rights on this date, and that his statements should therefore be suppressed.

The holding of the <u>Miranda</u> case "is that an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning."  <u>United States v. Griffin</u>, 922 F.2d 1343, 1347 (8th Cir. 1990) (citing <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966)).  <u>Miranda</u> warnings protect an individual's Fifth Amendment privilege against self-incrimination by "ensuring that a suspect knows that he may choose not to talk to law enforcement, to talk only with counsel present, or to discontinue talking at any

6

time." <u>Colorado v. Spring</u>, 479 U.S. 564, 574 (1987). A <u>Miranda</u> warning is required prior to questioning whenever two conditions are present: (1) the suspect is being interrogated and (2) the suspect is in custody. <u>Unites States v. Flores-Sandoval</u>, 474 F.3d 1142, 1146 (8th Cir. 2007); <u>Griffin</u>, 922 F.2d at 1347; <u>United States v. Carter</u>, 884 F.2d 368, 371 (8th Cir. 1989).

Interrogation includes direct questioning or any practice reasonably likely to evoke an incriminating response from a suspect. <u>See</u> <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980). Here, neither party disputes that Mr. Briggs was being interrogated on December 21, 2009, that he was in custody, and that he was never advised of his <u>Miranda</u> rights until Agent Griswold's arrival with the search warrant in hand. For that reason, the government has conceded that all statements made by Mr. Briggs to Deputy Battest and others prior to the advisement of rights made by Agent Griswold should be suppressed. The court agrees and so recommends.

**B.      Whether Mr. Briggs' Statements Were Voluntary**

Tucked away in Mr. Briggs' motion to suppress is the solitary assertion that his statements were not voluntary. <u>See</u> Docket 20, page 2. No legal authority is offered in support of this assertion. No facts are argued in support of the argument. The government wholly failed to address this argument. Although Mr. Briggs has not adequately articulated his motion to suppress on the basis of voluntariness, the court nevertheless addresses it.

7

The Supreme Court has stated that, under the Due Process Clause of the Fifth and Fourteenth Amendments, "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned." Miller v. Fenton, 474 U.S. 104, 109 (1985). "In considering whether a confession was voluntary, the determinative question is whether the confession was extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-determination was critically impaired." United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998). The court must look to the totality of the circumstances, "including the conduct of the law enforcement officials and the defendant's capacity to resist any pressure." Id. See also Withrow v. Williams, 507 U.S. 680, 688-89 (1993) (continuing to adhere to the totality of circumstances test). The burden of demonstrating that a defendant's statement was voluntary rests with the government, which must prove voluntariness by at least a preponderance of the evidence. Missouri v. Seibert, 542 U.S. 600, 608 n.1 (2004).

The Supreme Court has made clear that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167 (1986). That is because a *prima facie* showing

of a due process violation must include a showing of some sort of *state action.*
Id. at 165.  Therefore, a defendant's mental status alone can never result in a
finding that his statement was involuntary without some form of police
overreaching.  Id.

However, this does not mean that a defendant's mental status is
irrelevant to the question of whether his statement was voluntary.  A
defendant's mental status is still relevant under the totality of circumstances
test to the extent the evidence shows that the police were aware of that mental
status and acted in some way to exploit it.  See Townsend v. Sain, 372 U.S.
293, 298-99 (1963) (defendant's statement was involuntary when obtained
following the police's administration of a truth serum to defendant); Blackburn
v. Alabama, 361 U.S. 199, 207-08 (1960) (defendant's statement involuntary
where police were aware of defendant's history of mental problems, knew that
he was "probably insane," and proceeded with interrogation); United States v.
Makes Room For Them, 49 F.3d 410, 415 (8th Cir. 1995) (holding that totality of
circumstances requires consideration of defendant's age, education, and
experience insofar as police knew those facts).  Where a defendant suffered
from some mental infirmity and police were unaware of that infirmity, courts
have found the necessary state action to be missing.  Connelly, 479 U.S. at
164-65; United States v. Rohrbach, 813 F.2d 142, 144-45 (8th Cir. 1987).

The existing precedent outlines the type of police conduct that courts have found to be coercive.  The conduct includes extreme duration and conditions of detention, the manifest attitude of police toward the defendant, pressures which sap or sustain a defendant's powers of resistance or self-control, and exploiting a defendant's mental and physical state.  <u>See</u> <u>Spring</u>, 479 U.S. at 574; <u>Davis v. North Carolina</u>, 384 U.S. 737, 739-53 (1966) (defendant held for 16 days of icommunicado interrogation in a closed cell without windows); <u>Reck v. Pate</u>, 367 U.S. 433, 436-44 (1961) (defendant held for four days with inadequate food and medical attention until confession obtained); <u>Culombe v. Connecticut</u>, 367 U.S. 568, 569-70, 621-22 (1961) (defendant held for five days of repeated questioning during which police employed coercive tactics); <u>Payne v. Arkansas</u>, 356 U.S. 560, 561-68 (1958) (defendant held incommunicado for three days with little food and threats that a lynch mob would be admitted into the jail); <u>Ashcraft v. Tennessee</u>, 322 U.S. 143, 153-55 (1944) (defendant questioned by relays of officers for 36 hours without sleep).  It is this body of law which the court applies to Mr. Briggs' assertion that his statement was involuntary.

Based on the legal analysis of <u>Connelly</u> and its progeny, the court considers all the facts and circumstances surrounding Mr. Briggs' statements in determining whether those statements were voluntary.  <u>Withrow</u>, 507 U.S. at 688-689; <u>Arizona v. Fulminante</u>, 499 U.S. 279, 285-86 (1991); and <u>Fenton</u>, 474

U.S. at 109-10.  In this context, the court also considers Mr. Briggs' personal characteristics to the extent they were known to Deputy Battest.  <u>Blackburn</u>, 361 U.S. at 207-08; <u>Makes Room For Them</u>, 49 F.3d at 415; <u>Jenner v. Smith</u>, 982 F.2d 329, 333 (8th Cir. 1993).  The court concludes that Mr. Briggs' December 21, 2009, statement was voluntary.

No evidence of any kind was introduced to support the assertion or conclusion that there was anything out of the ordinary as to Mr. Briggs' state of mind or mental status.  There was a suggestion that he may have ingested marijuana at some time prior to Deputy Battest's arrival, but there was no indication that he was disoriented, not alert, uncomprehending, or otherwise not fully functioning mentally.  To the contrary, Deputy Battest testified that as soon as he identified himself to Mr. Briggs and stated the reason for his appearance, Mr. Briggs appeared to immediately fully grasp the situation and to be considering whether to cooperate or flee.

The four hours during which Mr. Briggs was in custody without benefit of <u>Miranda</u> warnings was not exceptional or excessive.  There is no evidence that the officers deprived Mr. Briggs of access to needed food, water, restroom facilities, or medical attention during this period.

Furthermore, neither Deputy Battest nor Deputy Oldson nor any other officer who arrived on the scene engaged in any type of coercion, threats, intimidation, or any other behavior that could potentially render Mr. Briggs'

statements involuntary.  This was a routine, orderly execution of an arrest

warrant, but for the fact that Deputy Battest failed to advise Mr. Briggs of his

Miranda rights and but for the discovery of the marijuana lying out in plain

view on the dining room table.  Accordingly, the court recommends that

Mr. Briggs' motion to suppress on the basis that his statements were

involuntary be denied.

**C.      Whether the Evidence Seizued Pursuant to the Search Warrant
Should Be Suppressed Because That Evidence Was Derivative of
Mr. Briggs' Unwarned Statements**

Mr. Briggs also argues that the physical evidence seized pursuant to the

state court search warrant should be suppressed because that evidence was

"fruit of the poisonous tree" of the Miranda violation.  See Wong Sun v. United

States, 371 U.S. 471 (1963).  The government opposes this portion of

Mr. Briggs' motion.  The court notes at the outset that Mr. Briggs' statements

were voluntary, though they were made without benefit of Miranda warnings

under circumstances where those warnings were required.

In United States v. Patane, 542 U.S. 630, 633-34 (2004), the Supreme

Court addressed whether physical evidence obtained as a result of a voluntary

but unwarned statement should be suppressed as fruit of the poisonous tree

because the statement was obtained in violation of Miranda.  Justices Thomas

and Scalia and then-Chief Justice Rehnquist held that physical evidence does

not fall within the Fifth Amendment's protection against self-incriminating

statements and, therefore, physical evidence which is obtained pursuant to

voluntary but unwarned statements need not be suppressed.  Id. (plurality).

Justices Kennedy and O'Connor concurred, stating that admission of physical

evidence does not "run the risk of admitting into trial an accused's coerced

incriminating statements against himself."  Id. at 645.

The Eighth Circuit has addressed the issue of the admissibility of

physical evidence in the form of a suspect's fingerprints that were obtained

through unwarned, voluntary statements.  See Flores-Sandoval, 474 F.3d at

1144.  The court held that so long as the non-Mirandized statement was

voluntary, the Miranda violation does not warrant the suppression of derivative

physical evidence.  Id. at 1147.

In the Morse case, the Eighth Circuit held that the crack cocaine

obtained from Morse after he made unwarned statements need not be

suppressed.  United States v. Morse, 569 F.3d 882, 884-85 (8th Cir. 2009).  The

court held that, under Patane, a voluntary but unwarned statement was not

grounds for the suppression of "physical evidence that is the fruit of custodial

interrogation conducted without Miranda warnings."  Id.  See also United

States v. Syslo, 303 F.3d 860, 865 (8th Cir. 2002) (Miranda warning not

required before handwriting exemplars are obtained from suspect).

The court has not found any Eighth Circuit cases dealing with the use of

voluntary, but unwarned statements in an application for a search warrant

similar to the facts of this case.  However, the Tenth Circuit and the District of Massachusetts have addressed cases involving those facts.

In United States v. Phillips, 468 F.3d 1264 (10th Cir. 2006), cert. denied, 549 U.S. 1312 (2007), the Tenth Circuit held that DNA evidence obtained from a defendant without prior Miranda warnings need not be suppressed.  Phillips, 468 F.3d at 1265-66.  In Phillips, the police had obtained an unwarned statement from Phillips and used that statement in an affidavit seeking a search warrant for the purpose of obtaining a buccal swab from Phillips.  Id. Phillips argued that the buccal swab evidence and the resulting DNA analysis conducted from that buccal swab should be suppressed because the search warrant was based in part on a statement obtained in violation of Miranda.  Id.

Because the statement itself, though unwarned, was voluntary and uncoerced, the Tenth Circuit held that the resulting physical evidence need not be suppressed.  Id.  (citing Patane, 542 U.S. at 635, 645 (plurality opinion and Kennedy, J., concurring)).  The Tenth Circuit also held that the fact that Patane had involved an unwarned statement that led to the physical evidence, while this case involved an unwarned statement that was used in an affidavit for a search warrant that in turn led to the physical evidence, was a distinction without any legal significance.  Id.  Rather, the key fact was that the object of the defendant's suppression motion in both cases was physical evidence rather than a statement.  Id.

14

In the case of <u>United States v. Daubmann</u>, 474 F. Supp. 2d 228

(D. Mass. 2007), police obtained voluntary, but unwarned statements from a

suspect in violation of <u>Miranda</u> while they were executing a search warrant.  <u>Id.</u>

at 230-33.  They then used those statements to obtain a second, expanded

search warrant.  <u>Id.</u> at 230-33, 235-37.  The defendant argued that her

unwarned statements should not have been considered by the magistrate judge

in issuing the second more expansive search warrant.  <u>Id.</u> at 236.[2]

The <u>Daubmann</u> court noted that the Supreme Court on several occasions

has rejected the "fruit of the poisonous tree" doctrine where physical evidence

was discovered as a result of an uncoerced statement obtained by police in

violation of <u>Miranda</u>.  <u>Id.</u> at 236 (citing <u>Patane</u>, 542 U.S. at 637 (Thomas, J.,

plurality); <u>Oregon v. Elstad</u>, 470 U.S. 298, 307 (1985); <u>Harris v. New York</u>, 401

U.S. 222, 224-26 (1971); <u>Oregon v. Hass</u>, 420 U.S. 714, 722 (1975); <u>Michigan

v. Tucker</u>, 417 U.S. 433, 449-50 (1974)).  The district court held that "the

'complete and sufficient' remedy for a <u>Miranda</u> violation is the exclusion of

unwarned statements in the government's case-in-chief at trial."  <u>Id.</u> at 237

(quoting <u>Patane</u>, 542 U.S. at 641-42 (Thomas, J., plurality)).  The court held

that the fact that the police in this case used the unwarned statements to

obtain a search warrant rather than using the statements to discover evidence

directly was an immaterial difference.  <u>Id.</u> at 237 (quoting <u>Phillips</u>, 468 F.3d at

---

[2]No one disputed that the statements themselves established probable
cause for the search warrant.  <u>Id.</u> at 236 n.5.

15

1266).  Accordingly, the court concluded that the magistrate judge acted properly in considering the unwarned statements to determine that there was probable cause in support of the issuance of the search warrant.  Id.

Based on the foregoing authorities, the court concludes that the physical evidence seized from Mr. Briggs' apartment pursuant to the search warrant should not be suppressed.  Mr. Briggs statements were voluntary and uncoerced, though they were obtained in violation of the rule in Miranda. However, the violation of Miranda does not result in the suppression of subsequently-obtained physical evidence.  Patane, 542 U.S. at 633-34, 645; Morse, 569 F.3d at 884-85; Flores-Sandoval, 474 F.3d at 1147;  Phillips, 468 F.3d at 1265-66; and Daubmann, 474 F. Supp. 2d at 236-37.  For that reason, the court recommends that Mr. Briggs' request to suppress the physical evidence seized from his apartment be denied.

## D.    Whether the Search Warrant Was Supported By Probable Cause Independent of Mr. Briggs' Statements

Finally, the government argues that the physical evidence obtained via the search warrant should not be suppressed because it would inevitably have been discovered.  To prove that evidence would have been inevitably discovered, the government must show (1) that there was a reasonable probability that police would have discovered the evidence in question by lawful means, and (2) that the government was actively pursuing an alternative, substantial line of investigation at the time of the constitutional violation.

16

United States v. Romo-Corrales, 592 F.3d 915, 920 n.5 (8th Cir. 2010) (citing
United States v. Pruneda, 518 F.3d 597, 604 (8th Cir. 2008)).

As to the first prong, the court finds that the application for the search
warrant, with Mr. Briggs' statements excised, did provide probable cause for
the issuance of the search warrant. "If an affidavit in support of a search
warrant 'sets forth sufficient facts to lead a prudent person to believe that there
is a "fair probability that contraband or evidence of a crime will be found in a
particular place," ' probable cause to issue the warrant has been established."
United States v. Grant, 490 F.3d 627, 631 (8th Cir. 2007) (citing United States
v. Warford, 439 F.3d 836, 841 (8th Cir. 2006) (quoting Illinois v. Gates, 462 U.S.
213, 238 (1983)). "Probable cause requires only a showing of fair probability,
not hard certainties." United States v. Hudspeth, 525 F.3d 667, 676 (8th Cir.
2008). Whether a search warrant is supported by probable cause is to be
determined by considering the totality of the circumstances. Grant, 490 F.3d
at 632. The issuing judge's resolution of the issue of probable cause should be
paid "great deference by reviewing courts." Id. (quoting Gates, 462 U.S. at 236;
Spinelli v. United States, 393 U.S. 410, 419 (1969)).

Reviewing courts examine the sufficiency of an affidavit in support of a
search warrant using "common sense" and not using a "hypertechnical"
approach. Grant, 490 F.3d at 632 (citing United States v. Solomon, 432 F.3d
824, 827 (8th Cir. 2005) (quoting United States v. Williams, 10 F.3d 590, 593

(8th Cir. 1993)).  "Where there is no evidentiary hearing before the magistrate judge, the probable cause determination must be based upon 'only that information which is found within the four corners of the affidavit.' " <u>Hudspeth</u>, 525 F.3d at 674 (quoting <u>United States v. Olvey</u>, 437 F.3d 804, 807 (8th Cir. 2006)).

Here, the court first notes that Deputy Battest's entry into Mr. Briggs' home was lawful.  "A lawful arrest warrant carries with it the authority to enter the residence of the person named in the warrant in order to execute the warrant as long as the officers executing the warrant have a reasonable belief that the suspect resides at and is currently present at the dwelling."  <u>United States v. Lloyd</u>, 396 F.3d 948, 952 (8th Cir. 2005) (citing <u>Payton v. New York</u>, 445 U.S. 573, 602-03 (1980)).  In these proceedings, Mr. Briggs contests neither the validity of the state arrest warrant nor Deputy Battest's execution of that warrant.

Once Mr. Briggs opened the door to his home, Deputy Battest was overwhelmed by the smell of raw marijuana.  When Deputy Battest lawfully stepped across the threshold to Mr. Briggs' apartment and into the entry area of that dwelling to execute the arrest warrant for Mr. Briggs, he saw in plain view two clear plastic sandwich-sized bags of marijuana and marijuana pipes on top of a dining room table.  However, the search warrant application recites only the fact that Deputy Battest saw the pipes, so the court limits its

evaluation of the probable cause issue to Deputy Battest's observation of the pipes and the smell of marijuana. Hudspeth, 525 F.3d at 674 (evaluation of probable cause limited to "four corners" of the application). The affidavit also erroneously asserts that Deputy Battest saw the shoebox of marijuana. This was not true as Deputy Battest did not see the shoebox of marijuana until Mr. Briggs told him about it. The court therefore also disregards the information in the affidavit regarding the shoebox. Id.

The two observations by Deputy Battest that are fair to consider–the smell of marijuana and the sight of marijuana pipes–without considering any statements made by Mr. Briggs, provided probable cause for the search warrant. All that is required to establish probable cause is a "fair probability that contraband or evidence of a crime will be found in a particular place." The smell of an illegal controlled substance coupled with paraphernalia used for ingesting that illegal substance in plain view leads to the conclusion that it is likely a search will yield evidence of a crime. Gates, 462 U.S. at 238; Grant, 490 F.3d at 631; Warford, 439 F.3d at 841. Cf. United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000); United States v. Caves, 890 F.2d 87, 89-91 (8th Cir. 1989) (odor of marijuana gave rise to probable cause sufficient to justify a warrantless search under the automobile exception).

In supplemental briefing following the evidentiary hearing in this case, Mr. Briggs argues that the "only reason Battest and the other deputy embarked

. . . on a 'substantial, alternative line of investigation' was Briggs' un-Mirandized statements about the presence of additional large quantities of marijuana." See Docket 24, page 6. The court does not view the evidence in this way. Deputy Battest was at Mr. Briggs' home to execute an arrest warrant. He embarked on a substantial, alternative line of investigation–the marijuana and guns–because he saw marijuana and marijuana pipes on the dining room table. This, separate and independent from Mr. Briggs' unwarned statements, would have inevitably lead to a search warrant. Accordingly, because the search warrant was supported by probable cause even excising Mr. Briggs' unwarned but voluntary statements and evidence derived from those statements, the court recommends that Mr. Briggs' request to suppress the physical evidence seized pursuant to that search warrant be denied.

## CONCLUSION

Based on the above analysis, the court respectfully recommends that Mr. Briggs' motion to suppress [Docket No. 20] be granted in part and denied in part as follows:

1.    granted as to Mr. Briggs' statements made to law enforcement prior to the arrival of Agent Griswold at Mr. Briggs' apartment; and

2.    denied as to the physical evidence seized from Mr. Briggs' apartment.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained.  <u>See</u> Fed. R. Crim. P. 59(b); 28 U.S.C. § 636(b)(1)(B).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  <u>Id.</u>  Objections must be timely and specific in order to require *de novo* review by the district court.  <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

Dated June 18, 2010.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE